IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE BELL-SPARROW, | No. C 12-02782 SI |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MCGOWAN** |
| v. | |
| PAUL WILTZ, MONE'T INC., and WONDA MCGOWAN | |
| Defendants. | |

Now before the Court is a motion by plaintiff Arlene Bell-Sparrow for summary judgment against defendant Wonda McGowan. Docket No. 70. The Court scheduled a hearing on the matter for June 27, 2014, but when the matter was called by the Court, plaintiff was not present in the courtroom and could not be reached at any of the telephone numbers she had provided to the Court. Therefore, the matter was submitted for decision on the papers filed. Having considered the parties' arguments, the Court hereby DENIES plaintiff's motion for summary judgment. **In addition, the Court SCHEDULES a further telephonic case management conference for Friday, July 25, 2014 at 3:00 p.m. to discuss the scheduling of a bench trial or alternatives to a bench trial in this matter.**

**BACKGROUND**

Defendant Mone't Inc. ("Mone't") is an Illinois corporation that provides funding for commercial property. Docket No. 28, FAC at 6; Docket No. 73 at 16, 18. Defendant Paul Wiltz is the owner and CEO of Mone't, and defendant Wonda McGowan was the Executive Vice-President and

Senior Marketing Director of Mone't.[1]  Docket No. 73 at 12-15, 18-20; Docket No. 73-2 at 4, 12-13.

Around August 2009, plaintiff contacted Mr. Wiltz seeking help with the purchase of a commercial property. FAC at 6. On September 11, 2009, Mr. Wiltz forwarded to plaintiff, through an email by Don Lucas, a retention agreement and requested that plaintiff execute the agreement and send the required retention fee to Mone't by September 15, 2009. Docket No. 73 at 8-9. Plaintiff states that the contract contained a clause requiring a non-refundable up-front fee of $11,500. FAC at 6. On September 13, 2009, plaintiff sent an email to Mr. Wiltz and Mr. Lucas stating that $7,500 was all the money she had and asking them to change the fee provision in the contract making the required fee refundable. Docket No. 73 at 8-9; Docket No. 73-1 at 5. Plaintiff alleges that she later called Mr. Wiltz and requested that the contract be changed so that she would receive the $11,500 fee back if the commercial project was not funded. FAC at 6-7. Plaintiff states that Mr. Wiltz agreed to change the terms of the contract and stated that plaintiff would be reimbursed the $11,500 if the project did not go through. *Id.* at 6-7, ¶¶ 2-3; Docket No. 72, Bell-Sparrow Decl. ¶¶ 2, 14.

Plaintiff entered into the contract with Mone't, and, on September 17, 2009 wired the $11,500 fee to Mone't. FAC ¶¶ 1, 49; Docket No. 72, Bell-Sparrow Decl. ¶ 1; Docket No. 73 at 10-11. On September 24, 2009, Ms. McGowan sent plaintiff an email acknowledging that the $11,500 had been received. Docket No. 73 at 20-21.

Plaintiff found a commercial property called Emerald Square Apartments listed for $4,700,000 and made an offer on the property. Docket No. 72, Bell-Sparrow Decl. ¶ 4; Docket No. 73 at 22-32. On October 8, 2009, Mr. Wiltz sent plaintiff an email informing her that in order to obtain funding for the property, plaintiff would have to wire an additional $60,000 to Mone't.[2]  Docket No. 73 at 33-36;

---

[1] Defendant McGowan states that she worked at Mone't from approximately August 2009 until March 2010. Docket No. 73-2 at 4, 12. Ms. McGowan also states that she was never in charge of Mone't and was not a licensed realtor at the time she was employed at Mone't. Docket No. 73-2 at 4-5, 13-14.

[2] The email also showed that certain additional charges and fees would be attached to the loan, making the final purchase price of the property $7,540,000. Docket No. 73 at 33-36; Docket No. 73-1 at 22-24.

Docket No. 73-1 at 22-24; *see also* Docket No. 73-1 at 6, 8 (November 18, 2009 email from Ms. McGowan to plaintiff regarding the $60,000 payment). Plaintiff alleges that this additional payment was not required under the terms of the contract. FAC ¶¶ 107-08; Docket No. 72, Bell-Sparrow Decl. ¶ 18. Plaintiff attempted to but was ultimately unable to obtain the additional money. Docket No. 72, Bell-Sparrow Decl. ¶ 19; *see, e.g.*, Docket No. 73-1 at 25-26. On January 20, 2010, plaintiff sent an email to Ms. McGowan stating that she no longer wished to continue working with Mone't to obtain a loan and requesting a refund of her $11,500 fee. Docket No. 73 at 33-36. Ms. McGowan forwarded plaintiff's refund request to Mr. Wiltz. *Id.*

Through several communications, Mr. Wiltz and Ms. McGowan represented to plaintiff that she would receive a refund of her $11,500 fee. Docket No. 73 at 38-40; Docket No. 73-1 at 2, 10-16, 35-36; Docket No. 73-2 at 39-42. However, plaintiff ultimately never received a refund of her $11,500 payment. Docket No. 72, Bell-Sparrow Decl. ¶ 22.

On May 31, 2012, plaintiff filed a complaint against defendants Paul Wiltz, Mone't Inc. and Wonda McGowan. Docket No. 1. On October 12, 2012, defendant McGowan filed an answer and a motion to dismiss the complaint.[3] Docket No. 15. On February 20, 2013, plaintiff filed a first amended complaint, alleging causes of action against the defendants for: (1) breach of contract; (2) negligent misrepresentation; (3) promissory fraud; (4) fraud; (5) violation of California's Unfair Competition Law ("UCL"); and (6) breach of the implied covenant of good faith and fair dealing. Docket No. 28.

On January 6, 2014, defendant McGowan filed a motion to dismiss the first amended complaint. Docket No. 58. On February 4, 2014, the Court granted in part and denied in part Ms. McGowan's motion to dismiss, dismissing plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Ms. McGowan. Docket No. 61 at 4-5.

By the present motion, plaintiff moves for summary of judgment of her claims for civil conspiracy, violation of the Truth In Lending Act ("TILA"), breach of fiduciary duty, negligent

---

[3] To date, defendants Wiltz and Mone't have not appeared in this action. On November 27, 2013, the Clerk entered default against defendants Wiltz and Mone't. Docket No. 55.

3

misrepresentation, and fraud. Docket No. 71, Pl.'s Mot at 11-25. In her opposition, defendant McGowan argues that plaintiff's action against her should be dismissed for lack of subject matter jurisdiction and for lack of personal jurisdiction. Docket No. 77, Def.'s Opp'n at 2-6. Both plaintiff and defendant are acting pro se.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

4

genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

In her opposition, defendant McGowan argues that the action should be dismissed for lack of subject matter jurisdiction. Def.'s Opp'n at 2-5. Specifically, defendant McGowan argues that the Court lacks diversity jurisdiction because the parties are not diverse and the amount in controversy has not been met. *Id.*

Federal courts are courts of limited jurisdiction. *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). Without subject matter jurisdiction "the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A federal court's subject-matter jurisdiction can never be waived or forfeited, objections to the court's jurisdiction may be resurrected at any point in the litigation, and courts are obligated to consider *sua sponte* whether subject matter jurisdiction exists. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1035-36 (9th Cir. 2013). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Here, plaintiff alleges that the Court has diversity jurisdiction. Docket No. 1, Compl. at 1. Diversity jurisdiction requires complete diversity of citizenship among the parties and a minimum amount in controversy of over $75,000. *See* 28 U.S.C. § 1332. Complete diversity of citizenship requires that not a single plaintiff is a citizen of the same state as any of the defendants. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 553 (2005). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A natural

5

1 person's citizenship is her place of domicile, i.e., permanent home. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "Where the plaintiff originally files in federal court, the amount in controversy is determined from the face of the pleadings. The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1006 (9th Cir. 2010) (citation and internal quotation marks omitted). To justify dismissal for lack of subject matter jurisdiction, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. *Id.*

In the complaint, plaintiff alleges that she is a citizen of California. Compl. at 1. Plaintiff also alleges that Mone't is an Illinois corporation operating in Memphis, Tennessee and that defendants Wiltz and McGowan are citizens of Tennessee. *Id.* In addition, in her opposition, Ms. McGowan concedes that at all relevant times, she was a resident of Tennessee and Mone't was a business operating in Tennessee. Def.'s Opp'n at 5. Thus, plaintiff has established complete diversity of citizenship.

Turning to the amount in controversy requirement, defendant McGowan is correct that in the complaint plaintiff has only alleged facts showing that she is entitled to $11,500 in compensatory damages, reflecting the amount of money she alleges she wired to Mone't on September 17, 2009.[4] Compl. ¶¶ 2-4, 9, 14. However, in the complaint, plaintiff also seeks punitive damages. *Id.* at 24. "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). "'However, the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met.'" *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 U.S. Dist. LEXIS 118882, *11 (N.D. Cal. 2009) (quoting *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004)). "Indeed, when determining the amount in controversy, 'a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages.'"

---

[4] In her prayer for relief, plaintiff seeks $68,500 in general damages for defendants' fraud. Compl. at 24. However, there are no allegations in the complaint supporting this amount of compensatory damages.

6

*Larkin v. Brown*, 41 F.3d 387, 3889 (8th Cir. 1994) (citing *Zahn v. International Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972)); *accord LM Ins. Corp. v. Spaulding Enters.*, 533 F.3d 542, 551 (7th Cir. 2008) ("[W]here the amount in controversy is primarily composed of punitive damages, such claims should be closely scrutinized."); *Kahal v. J. W. Wilson & Associates, Inc.*, 673 F.2d 547, 549 (D.C. Cir. 1982).

In the complaint plaintiff alleges a cause of action for fraud—intentional misrepresentation—under California and Tennessee law against the defendants. Compl. ¶¶ 74-79. Under California law, a plaintiff may recover punitive damages in connection with a non-contractual claim if she establishes by clear and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression or (3) malice. Cal. Civ. Code § 3294(a). Thus, punitive damages are potentially recoverable under California law where the plaintiff alleges a cause of action for intentional misrepresentation. *See* Cal. Civ. Code § 3294(c)(3) ("'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."); *Romo v. Stewart Title of California*, 35 Cal. App. 4th 1609, 1619 (1995). Similarly, under Tennessee law, a plaintiff may recover punitive damages only if the plaintiff proves by clear and convincing evidence that the "defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Therefore, under either California or Tennessee law, plaintiff is eligible to recover punitive damages based on her claim for intentional misrepresentation.

In order for dismissal based on the amount in controversy to be proper, it must appear to a legal certainty that plaintiff cannot obtain $63,501 in punitive damages in addition to the $11,500 in compensatory damages she seeks. An award of punitive damages violates the Due Process Clause if the award is grossly excessive. *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996). The Supreme Court has declined to impose a bright-line ratio which a punitive damages award cannot exceed. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). The Supreme Court has stated that "[s]ingle-digit multipliers are more likely to comport with due process." *Id.* ("[A]n award of more than

7

four times the amount of compensatory damages might be close to the line of constitutional impropriety."). However, the Supreme Court has also stated that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *BMW*, 517 U.S. at 582. In light of this language, Tennessee courts have found that multipliers exceeding single digits do not violate due process "when the defendant's action are found to be egregious and the economic harm is low." *McLemore v. Elizabethton Med. Investors, Ltd. P'ship*, 389 S.W.3d 764, 787 (Tenn. Ct. App. 2012) (affirming award of $4.25 million in punitive damages where compensatory damages were $225,000) (citing *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175 (Tenn. 2009) (modifying award of punitive damages to $500,000 where compensatory damages were $3,305); *Lahore v. Check Advance of Tenn., LLC*, 2010 Tenn. App. LEXIS 56 (Tenn. Ct. App. Jan 28, 2010) (affirming punitive damages award of $250,000 where the compensatory damages were $18,538)); *see also, e.g.*, *Bardic v. Oates*, 119 Cal. App. 4th 1 (2004) (modifying award of punitive damages to $1.5 million where compensatory damages were $165,527.63).

An award of $63,501 in punitive damages reflects a single-digit multiplier of approximately 5.5 when compared to the $11,500 in compensatory damages sought by plaintiff. Moreover, the amount of actual damages sought in the complaint is low, and plaintiff has alleged facts that if true could constitute egregious conduct by the defendants. Therefore, the Court cannot say with a legal certainty that an award of $63,501 would violate the due process clause. Accordingly, plaintiff has satisfied the amount in controversy requirement. *See, e.g.*, *Lopez v. Council on American-Islamic Reals. Action Network, Inc.*, 741 F. Supp. 2d 222, 234 (D.D.C. 2010) (holding that the plaintiff could meet the amount in controversy requirement based on a 7 to 1 ratio of punitive to compensatory damages); *Thomas v. Nat'l Legal Prof'l Assocs.*, 594 F. Supp. 2d 31, 34 (D.D.C. 2009) (holding that the plaintiff could meet the amount in controversy requirement based on a 6.5 to 1 ratio of punitive to compensatory damages); *see also, e.g.*, *Martin Ray Winery v. Graham*, No. C 06-3618 MHP, 2007 U.S. Dist. LEXIS 22858, at *8-9 (N.D. Cal. Mar. 29, 2007) (finding amount in controversy satisfied where plaintiff alleged $40,680

in compensatory damages and could obtain punitive damages based on his claim for intentional misrepresentation).

In sum, plaintiff has met her burden of establishing that the Court has diversity jurisdiction over her action. Accordingly, the Court declines to dismiss the action for lack of subject matter jurisdiction.

## II.     **Personal Jurisdiction**

In her opposition, defendant McGowan states that the Court lacks jurisdiction because she "never availed herself to California jurisdiction." Def.'s Opp'n at 7. Thus, Ms. McGowan appears to argue that the action should be dismissed because the Court lacks personal jurisdiction over her. *See id.* at 7-8.

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move dismiss an action for lack of personal jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "[a] general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citing Fed. R. Civ. P. 12(h)(1)); *see American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under [Rule 12] must be raised at the first available opportunity or, if they are not, they are forever waived.").

Defendant McGowan filed an answer to plaintiff's complaint and a motion to dismiss the complaint for failure to state a claim and for lack of proper service on October 12, 2012. Docket No. 15. In the filing, plaintiff did not challenge the Court's exercise of personal jurisdiction over her. Therefore, defendant McGowan waived any possible defect in personal jurisdiction. *See Benny*, 799 F.2d at 492; *Hayhurst*, 227 F.3d at 1106-07. Accordingly, the Court declines to dismiss the action against defendant McGowan for lack of personal jurisdiction.

///

**III.     Plaintiff's Claim for Civil Conspiracy**

Plaintiff moves for summary judgment of her claim for civil conspiracy under California law against defendant McGowan. Docket No. 71 at 11-12. Plaintiff argues defendants McGowan and Wiltz engaged in a conspiracy to defraud her. *Id.*

Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Id.* at 511 (citation omitted).

To prove a claim for civil conspiracy, a plaintiff must prove the following three elements: "(1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal. App. 4th 102, 137 (2003); *accord Applied Equipment*, 7 Cal. 4th at 510-11. In addition to these three elements, the "participants in a conspiracy also must know that their conduct is wrongful." *Beaumont Investment*, 111 Cal. App. 4th at 137; *see also Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1584 (1995) ("[T]o hold a defendant liable for joining an ongoing conspiracy to commit a tort, there must be evidence that the joiner had *actual knowledge* of the scheme to commit the tort." (emphasis in original)). But, "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission." *Kidron*, 40 Cal. App. 4th at 1582; *see also Schick v. Lerner*, 193 Cal. App. 3d 1321, 1328 (1987) ("The *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective."). It is not necessary for the defendant to "have joined the conspiracy at the time of its inception; every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance

of it." *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 206 (2010) (quotation marks omitted).

"[T]o the extent that knowledge of the scheme's unlawful purpose is required, it may be inferred from the surrounding circumstances, including the nature of the acts done, the relation of the parties, and the interests of the defendants." *Beaumont Investment*, 111 Cal. App. 4th at 137-38. But, civil conspiracy cannot be established by suspicions. *Kidron*, 40 Cal. App. 4th at 1582. "'There must be some evidence.'" *Id.* ("'Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense.'").

If plaintiff prevails on her claim for civil conspiracy, defendant McGowan would be liable for any torts that have been committed by defendant Wiltz. *See Applied Equipment*, 7 Cal. 4th at 510-11; *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 (2005). In an effort to establish a civil conspiracy, plaintiff has provided the Court with evidence showing that based on representations made to her by Mr. Wiltz, including the representation that her payment would be refundable, she wired $11,500 to Mone't. Docket No. 73 at 8-11. Plaintiff has also provided the Court with evidence showing that Ms. McGowan worked at Mone't, along with Mr. Wiltz, as an executive vice president from August 2009 to March 2010, and that Mone't was involved in commercial lending to small businesses. *Id.* at 12-18; Docket No. 73-2 at 4, 12. Plaintiff has also provided the Court with various communications between herself, Ms. McGowan, and Mr. Wiltz regarding the potential loan and her refund. Docket No. 73 at 20-21, 33-40; Docket No. 73-1 at 1-4, 6-18, 20-30. These communications include emails from Ms. McGowan stating that plaintiff would be refunded her $11,500 payment and stating that for plaintiff to obtain the requested loan she would need to wire an additional $60,000. Docket No. 73-1 at 6, 10, 13. Plaintiff has also provided the Court with evidence showing that others have given money to Mone't and never received a refund. Docket No. 73-2 at 7-8, 16, 18, 32-34.

There is also evidence in the record from defendant McGowan stating that she was never in charge of Mone't, that she did not known how the financing for Mone't worked, and that she had no control over whether plaintiff would receive a refund of her money. Docket No. 73-2 at 5-6, 13-14. She

11

further states that a major reason why she left the company was because she found out that a client, Ryan Gill, never received a refund of his money. *Id.* at 8, 18. Ms. McGowan also states that she never received $11,500 from plaintiff. Docket No. 77-1, McGowan Decl. ¶ 11.

In deciding a motion for summary judgment, the Court must the court must view the evidence in the light most favorable to the non-moving party, here Ms. McGowan, and draw all justifiable inferences in her favor. *See Anderson*, 477 U.S. at 255. Although there is some circumstantial evidence from which a reasonable jury could infer that Ms. McGowan and Mr. Wiltz entered into a conspiracy to defraud plaintiff, it is equally plausible for a jury to find that the evidence is insufficient to show that Ms. McGowan ever entered into an agreement, implicit or express, with Mr. Wiltz to defraud plaintiff or anyone else. A reasonable jury could find that any potential fraud was committed by Mr. Wiltz who was acting alone, and that Ms. McGowan was unaware of Mr. Wiltz's scheme and was merely working in an administrative capacity for him. Therefore, triable issues of disputed facts remain as to plaintiff's claim for civil conspiracy. Accordingly, the Court denies plaintiff's motion for summary judgment of her claim for civil conspiracy.

## IV.   Plaintiff's Claim for Violation of TILA

Plaintiff moves for summary judgment of her claim for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.[5] Docket No. 71 at 13-15. However, plaintiff's first amended complaint does not include a claim for violation of TILA. *See generally* Docket No. 28. A plaintiff may not assert a new cause of action in a motion for summary judgment that is not pled in the operative complaint. *See Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Accordingly, the Court

---

[5] In the heading for this section of her motion for summary judgment, plaintiff also refers to a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq. Docket No. 71 at 13. However, in the argument portion of this section of the motion, plaintiff only refers to violations of TILA. *See id.* at 13-15. In addition, plaintiff's FAC does not contain a cause of action for violation of RESPA. *See generally* Docket No. 28.

12

denies plaintiff's motion for summary judgment of her TILA claim.[6]

### V.   Plaintiff's Claim for Breach of Fiduciary Duty

Plaintiff moves for summary judgment of her claim for breach of fiduciary duty under Tennessee Code Ann. §§ 62-13-403, 62-13-405. Docket No. 71 at 15-17. However, plaintiff's first amended complaint does not include a claim for breach of fiduciary duty. *See generally* Docket No. 28. As explained above, a plaintiff may not assert a new cause of action in a motion for summary judgment that is not pled in the operative complaint. *See Navajo Nation*, 535 F.3d at 1080; *Coleman*, 232 F.3d at 1292. Accordingly, the Court denies plaintiff's motion for summary judgment of her claim for breach of fiduciary duty.[7]

---

[6] It is possible that plaintiff could seek leave to amend her first amended complaint to add a claim for violation of TILA against defendant McGowan. Under Federal Rule of Civil Procedure 15(a), "leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). However, a court should not grant leave to amend where amendment would be futile. *Id.*

"TILA was enacted in 1968 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1170 (9th Cir. 2003) (citing 15 U.S.C. § 1601(a)). TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Failure to provide the borrower with these required disclosures allows the borrower to bring suit to rescind the loan and recover any damages caused by the non-disclosure. *See* 15 U.S.C. §§ 1635, 1640.

In her summary judgment motion, plaintiff argues that the defendants violated TILA's appraisal independence requirements by conducting their own appraisal of the property. Docket No. 71 at 13-15. However, as plaintiff notes in her motion, this TILA disclosure requirement only applies to appraisals in connection with "a consumer credit transaction secured by the principal dwelling of [the] consumer." 15 U.S.C. § 1639e(a), (d); *see* Docket No. 71 at 14. The evidence submitted by plaintiff shows that the loan was for commercial property named Emerald Square, not plaintiff's principal dwelling. Docket No. 72, Bell-Sparrow Decl. ¶ 4; Docket No. 73 at 22-32. Accordingly, amendment of the complaint to add the proposed TILA claim would be futile.

[7] It is possible that plaintiff could seek leave to amend the first amended complaint to add a claim for breach of fiduciary duty under Tennessee Code Ann. §§ 62-13-403, 62-13-405. However, amendment of the complaint to add this claim would be futile.

Section 62-13-403 provides: "A licensee who provides real estate services in a real estate transaction shall owe all parties to the transaction the following duties . . . [a duty to] (2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge . . . ." Similarly, section 62-13-405 requires that when "a licensee personally assists a prospective buyer or seller in the purchase or sale of a property and the buyer or seller is not represented by this or any other licensee, the licensee shall verbally disclose" "[k]nown adverse facts about a property." The term

13

### VI. Plaintiff's Claims for Fraud and Negligent Misrepresentation

Plaintiff moves for summary judgment of her claims for fraud and negligent misrepresentation under Tennessee law. Docket No. 71 at 18-25. In support of these claims plaintiff argues that defendant McGowan made the following misrepresentations: (1) she did not disclose all material facts about the loan, including that an additional $60,000 payment would be required and that Mone't would add on certain closing costs; (2) she promised that plaintiff would be refunded her $11,500 payment; and (3) she gave an incorrect appraisal value of the property. *Id.* at 18-20. Plaintiff argues that she reasonably relied on these representations by sending to Mone't her $11,500 payment.

Under Tennessee law,

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

*First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991). To prove a claim for negligent misrepresentation under Tennessee law, the plaintiff must prove:

> (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff justifiably relied on the information.

*Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004).

---

"adverse facts" is defined in section 62-13-102 as "conditions or occurrences generally recognized by competent licensees that have negative impact on the value of the real estate, significantly reduce the structural integrity of improvements to real property or present a significant health risk to occupants of the property." Tenn. Code Ann. § 62-13-102(2); *accord Ledbetter v. Schacht*, 395 S.W.3d 130, 136 (Tenn. Ct. App. 2012).
   In support of this claim, plaintiff argues that Ms. McGowan failed to disclose the fact that plaintiff would have to pay an additional $60,000 to obtain the requested transaction and failed to disclose certain closing costs related to the loan. Docket No. 71 at 15. But, these are not "adverse fact[s]" as defined in section 62-13-102(2). That an additional $60,000 payment and certain closing costs were required is not a fact that would have a negative impact on the value of the real estate, significantly reduce the structural integrity of improvements to the real property, or present a significant health risk to the occupants. Accordingly, amendment of the complaint to add the proposed breach of fiduciary duty claim would be futile.

14

Plaintiff argues that defendant McGowan is liable for fraud and negligent misrepresentation because she failed to disclose that an additional $60,000 payment would be required to obtain the loan and failed to disclose certain closing costs. Tennessee courts have held that a nondisclosure of a material fact can support a claim for fraud or negligent misrepresentation when there is a duty to speak. *See Sears*, 146 S.W.3d at 621-22. However, plaintiff has failed to establish that defendant McGowan had a duty to disclose these facts. In the motion, plaintiff relies on Tennessee Real Estate law to establish that defendant McGowan had a duty to disclose these facts related to the loan. Docket No. 71 at 18. As explained in the preceding section, that an additional $60,000 payment and certain closing costs would be required to complete the loan transaction are not "adverse fact[s]" as defined in Tennessee Code Ann. § 62-13-102(2). Moreover, even if defendant McGowan had a duty to disclose these facts, there is a lack of evidence in the record showing that Ms. McGowan was able to disclose these facts prior to plaintiff providing Mone't with the $11,500 payment on September 17, 2009. There is no evidence in record showing that Ms. McGowan had knowledge of the closing costs or the $60,000 payment prior to September 17, 2009. For a party to have a duty to disclose certain facts, the party must have knowledge of those facts. *See Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986) ("'concealment or failure to disclose, becomes fraudulent only when it is the duty of *a party having knowledge of the facts* to discover them to the other party'" (emphasis added)). Accordingly, plaintiff has failed to establish that defendant McGowan is liable for these alleged nondisclosures.

Plaintiff also argues that defendant McGowan falsely promised that plaintiff would receive a refund of her $11,500 payment, and that she gave an incorrect appraisal value of the property. Docket No. 71 at 18, 20. There is evidence in the record showing that defendant McGowan represented to plaintiff that she would receive a refund of the $11,500. Docket No. 73 at 38; Docket No. 73-1 at 2, 10. There is also evidence in the record showing that defendant McGowan stated that the property at issue was worth $5.5 million. Docket No. 73-1 at 6. However, all of these representations were made after

15

1 plaintiff had already provided Mone't with the $11,500 payment.[8] Therefore, plaintiff could not have
2 relied on these statements in providing Mone't with the $11,500. Reliance is an essential element of
3 both a cause of action for fraud and a cause of action for negligent misrepresentation. *See Allied Sound,*
4 *Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001) ("[Plaintiff] must prove that it reasonably relied
5 upon the misrepresentation to its detriment."); *Bowman v. Waggoner*, 2006 Tenn. App. LEXIS 32, at
6 *13 n. 5 (Tenn. Ct. App. Jan. 17, 2006) ("In a claim based on fraud the plaintiff must show he suffered
7 damage as a result of the misrepresentation."); *McNeil v. Nofal*, 185 S.W.3d 402, 408-09 (Tenn. Ct.
8 App. 2005). Accordingly, the Court denies plaintiff's motion for summary judgment of her claims for
9 fraud and negligent misrepresentation.[9]

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment. Docket No. 70. **In addition, the Court SCHEDULES a further telephonic case management conference for Friday, July 25, 2014 at 3:00 p.m. to discuss the scheduling of a bench trial or alternatives to a bench trial in this matter.**

**IT IS SO ORDERED.**

Dated: June 27, 2014

SUSAN ILLSTON
United States District Judge

---

[8] The evidence shows that plaintiff wired the $11,500 to Mone't on September 17, 2009. Docket No. 73 at 10-11. Based on the evidence in the record, the earliest communications that plaintiff had with defendant McGowan was through an email sent on September 24, 2009, confirming receipt of the payment. *Id.* at 20-21.

[9] It is possible that defendant McGowan could be liable for fraud or negligent misrepresentation based on representations made by Mr. Wiltz if plaintiff is able to prevail on her civil conspiracy claim. *See Applied Equipment*, 7 Cal. 4th at 510-11; *Berg & Berg Enterprises*, 131 Cal. App. 4th at 823. However, as explained above, triable issues of fact remain with respect to plaintiff's claim for civil conspiracy, and, therefore, plaintiff is not entitled to summary judgment on that claim or any other claims that are dependent on that claim.

16