UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARLENE BELL-SPARROW,

          Plaintiff,

      v.

PAUL WILTZ, et al.,

          Defendants.

Case No.  12-cv-02782-SI

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

January 20, 2015, the Court held a bench trial in this case. For the reasons stated below, the Court **DENIES** plaintiff's claims as to defendant Wanda McGowan, and enters **JUDGMENT** against defendants Mone't Inc. and Paul Wiltz in the amount of $142,500.

## BACKGROUND

The facts of this case show that *pro se* plaintiff Arlene Bell-Sparrow was lured into a financial transaction which had the effect of draining her of her life's savings. The perpetrators were granted access to plaintiff's family church, and presented themselves to the congregation as beacons of financial security in the midst of a complicated, volatile and rapidly changing economy. They used the implicit imprimatur of this church and other community organizations to lend credence to their claims of financial opportunity. They offered plaintiff the chance to purchase a multi-million dollar commercial property they knew she could never afford, and accepted a large upfront fee with no intention of ever consummating the transaction. Despite promises to refund plaintiff her money, they ultimately absconded with it. Given this willful conduct, it is beyond dispute that plaintiff suffered a legally cognizable harm. The more difficult question the Court must answer is who among the named defendants may be held to account for it.

United States District Court
Northern District of California

On May 31, 2012, plaintiff filed a complaint against defendants Mone't Inc., Paul Wiltz and Wonda McGowan.  Docket No. 1.  Defendants Mone't Inc. and Wiltz failed to appear in the case, and on November 27, 2013, the Clerk entered their defaults.  Docket No. 55.

On October 12, 2012, *pro se* defendant McGowan filed an answer and a motion to dismiss the complaint.  Docket No. 15.  On February 20, 2013, plaintiff filed a first amended complaint ("FAC"), alleging causes of action against the defendants for: (1) breach of contract; (2) negligent misrepresentation;  (3)  promissory  fraud;  (4)  fraud;  (5)  violation  of  California's  Unfair Competition Law ("UCL"); and (6) breach of the implied covenant of good faith and fair dealing.  Docket No. 28.

On January 6, 2014, defendant McGowan filed a motion to dismiss the FAC.  Docket No. 58.  On February 4, 2014, the Court granted in part and denied in part Ms. McGowan's motion to dismiss, dismissing plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against McGowan.  Docket No. 61 at 4-5.

On May 8, 2014, plaintiff moved for summary judgment against McGowan. Docket No. 70. On June 27, 2014, the Court denied plaintiff's motion for summary judgment. Docket No. 79. On January 20, 2015, the Court held a bench trial[1], and now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT[2]

1.  Defendant Mone't Inc. ("Mone't") is an Illinois corporation that provides funding for purchase  of  commercial  property. Docket No. 73 at 16, 18.   Mone't had an office in

---

[1] Both plaintiff and defendant McGowan appeared *pro se* at trial.  Further, defendant McGowan, who lives in Tennessee, appeared by video conference from Memphis, Tennessee. The video conferencing equipment was graciously provided and operated by the IT department of the District Court for the Western District of Tennessee in Memphis.

[2] These findings are based upon evidence presented at the bench trial between plaintiff and defendant McGowan. While many of these facts are also germane to the conduct of defendants Wiltz and Mone't, the factual allegations supporting the default judgment against them will be discussed more fully in Section II, *infra*.

Memphis, Tennessee.  Docket No. 73 at 18.

2.  Defendant Paul Wiltz is the owner and CEO of Mone't, and defendant Wonda McGowan held titles of Executive Vice-President and Senior Marketing Director of Mone't.  Docket No. 73 at 12-15, 18-20; Docket No. 73-2 at 4, 12-13.

3.  In addition to defendants McGowan and Wiltz, Mone't also employed Monique Clark, an administrative assistant, and Don Lucas, Vice-President. Docket No. 101, Trial Transcript at 31.

4.  McGowan worked at Mone't in Memphis from approximately August 2009 until March 2010.[3] Docket No. 73-2 at 4, 12; Trial Transcript at 17, 53.

5.  McGowan states that she worked as an independent contractor, primarily performing secretarial duties. She maintains she never had the ability to act on behalf of the defendant corporation.  Docket No. 73-2 at 4-5, 13-14; Trial Transcript at 14, 17-18, 89.

6.  McGowan was at one point a licensed real estate agent in the state of Tennessee. However, at all times relevant to this case her license was inactive, and it has since expired. Trial Transcript 14-15, 18.  She did not act in a real estate agent capacity for any of the transactions at issue in this case; she did not represent plaintiff – who retained her own real estate agent – and did not have any prior commercial real estate experience. Trial

_____

[3] Plaintiff argues that McGowan was an employee of Mone't as early as March of 2009, and that McGowan gave a presentation with Wiltz at Abundant Faith Ministry church in Memphis, Tennessee around that time. McGowan denies that she was an employee at that time. Larry Smith, plaintiff's brother and pastor at Abundant Faith, testified that the church fell prey to the same scheme as plaintiff, with the only significant difference being that Wiltz allegedly promised to make a donation to the church once the transaction was complete. Trial Transcript at 41-44. Smith first testified that McGowan gave a presentation with Wiltz in the "summer" or "July" of 2009. *Id.* at 45, 47. McGowan admitted being at the church the day of the presentation for a women's business breakfast, but denied any affiliation with Wiltz or Mone't at that time. *Id.* at 45-46, 57. When pressed on the issue of whether McGowan participated in the presentation with Wiltz, Smith's testimony became equivocal. *Id.* at 46:6-11 ("I don't know. I mean, it was years ago, but I'm pretty sure you came twice…No, I can remember. But the question they asked me, I would have to go back in the notes."). The Court credits the testimony of McGowan and finds that her affiliation with Mone't did not commence until August of 2009, and that she played no part in a presentation to Smith's congregation.

Transcript at 24.

7.  Despite her lofty titles, and Mone't's website touting her business acumen, Trial Transcript at 35, McGowan was not a corporate officer and had no power to direct the corporation. While Wiltz did at one point direct her to sign Monique Clark's pay checks, McGowan refused to do so anymore after one of them bounced. Trial Transcript at 62. There is nothing in the record to show that McGowan had access to company funds. *See id.* at 79-81.

8.  According to an IRS form 1099-MISC, McGowan made a total of $7,558 during her tenure at Mone't. *Id.* at 37. She ultimately resigned because Wiltz had stopped paying her, and refused to become current on the wages that he owed. *Id.* at 80-81.

9.  In August of 2009, Wiltz gave a presentation on behalf of Mone't at the Abundant Faith Ministry church in Memphis, Tennessee. Trial Transcript at 9.  Plaintiff was in attendance, as was her brother Larry Smith, pastor of the church.

10. At the conclusion of the presentation, plaintiff expressed to Wiltz her interest in purchasing a commercial property. *Id.*

11. On September 11, 2009, through an email by Don Lucas, Wiltz forwarded to plaintiff a retention agreement.  He requested that plaintiff execute the agreement and send the required retention fee to Mone't by September 15, 2009.  The required retention fee included a non-refundable upfront fee of $11,500.  Docket No. 73 at 8-9.

12. Plaintiff entered into the contract with Mone't, and, on September 17, 2009 wired the $11,500 fee to Mone't.  Docket No. 72, Bell-Sparrow Decl. ¶ 1; Docket No. 73 at 10-11; Trial Transcript at 18.

13. On September 24, 2009, McGowan sent plaintiff an email acknowledging that the $11,500 had been received.  Docket No. 73 at 20-21; Trial Transcript at 19-20.

United States District Court
Northern District of California

United States District Court
Northern District of California

14. Plaintiff asked if the contract could be changed so that the fee would be refundable in the event the transaction was not completed. Wiltz agreed to change the terms of the contract and stated that plaintiff would be reimbursed the $11,500 if the project did not go through. Docket No. 73 at 6-7, ¶¶ 2-3; Docket No. 72, Bell-Sparrow Decl. ¶¶ 2, 14.

15. Plaintiff found a commercial property in Memphis, Tennessee called Emerald Square Apartments listed for $4,700,000 and made an offer on the property. Docket No. 72, Bell-Sparrow Decl. ¶ 4; Docket No. 73 at 22-32. Trial Transcript at 25-26.

16. On October 8, 2009, Wiltz sent plaintiff an email informing her that in order to obtain funding for the property, plaintiff would have to wire an additional $60,000 to Mone't. Trial Transcript at 20.

17. The email also showed that certain additional charges and fees would be attached to the loan, making the final purchase price of the property $7,540,000, an increase of approximately 40%. Docket No. 73 at 33-36; Docket No. 73-1 at 22-24. Transcript at 21-22, 76.

18. Plaintiff refused to raise her offer or transfer the additional $60,000. She stated many times to Wiltz and McGowan that the $11,500 was all the money she had. *See e.g.* Trial Transcript at 21, 23, 67.

19. On January 20, 2010, plaintiff sent an email to McGowan stating that she no longer wished to continue working with Mone't to obtain a loan and requesting a refund of her $11,500 fee. Docket No. 73 at 33-36. Trial Transcript at 11, 27-28.

20. McGowan forwarded plaintiff's refund request to Wiltz, and on January 26, 2010, McGowan emailed plaintiff that plaintiff's money would be refunded in 14 to 21 days. Trial Transcript at 28.

21. On February 11, 2010, plaintiff sent McGowan an email requesting an update on her refund. Trial Transcript at 29. Plaintiff followed up with a call when she did not hear back and left a voicemail. McGowan responded that she was out for the week, but that in any event she could not effectuate a refund on her own. *Id.*

22. McGowan had no authority to make a refund without the approval of Wiltz. *Id.* at 79.

5

23. Plaintiff never received a refund of her $11,500 fee.

### CONCLUSIONS OF LAW

Plaintiff asserts causes of action for (1) negligent misrepresentation, (2) promissory fraud, (3) fraud, (4) violation of California's Unfair Competition Law ("UCL"), (5) breach of contract, and (6) breach of the implied covenant of good faith and fair dealing against all three defendants.[4]

### I.    Defendant Wonda McGowan

#### A.    Fraud and Negligent Misrepresentation

Plaintiff asserts claims for fraud – intentional misrepresentation – under California and Tennessee law, and a claim for negligent misrepresentation under Tennessee law. In support of these claims, plaintiff argues that defendant McGowan made the following misrepresentations: (1) she did not disclose all material fact s about the transaction, including that an additional $60,000 payment would be required and that Mone't would add on certain closing costs; and (2) she promised that plaintiff would be refunded her $11,500 payment. Plaintiff argues that she reasonably relied on these representations by sending to Mone't her $11,500 payment.

Under Tennessee law,

> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud.  The representation must have been made with knowledge of its falsity and with a fraudulent intent.  The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

*First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991). Under California law, the elements of fraud are substantially similar.[5]

---

[4] On February 4, 2014, the Court dismissed these last two causes of action as to defendant McGowan. Docket No. 61.

[5] Under California law, the elements of fraud are "(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or '*scienter*'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Agosta v.*

United States District Court
Northern District of California

To prove a claim for negligent misrepresentation under Tennessee law, the plaintiff must prove:

> (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff justifiably relied on the information.

*Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004).

For a party to have a duty to disclose certain facts, the party must have knowledge of those facts. *See Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986) ("'concealment or failure to disclose, becomes fraudulent only when it is the duty of *a party having knowledge of the facts* to discover them to the other party.'") (emphasis added).

Therefore, under all of plaintiff's fraud and misrepresentation claims, she must, at minimum, show that McGowan knew or should have known of material facts which she failed to accurately convey. The Court finds that plaintiff has not met her burden to show by a preponderance of the evidence that McGowan knew, despite her assurances to the contrary, that plaintiff's money would not be refunded. Similarly, plaintiff has failed to show that McGowan knew that an additional $60,000 would be required to complete the transaction.

Indeed, the facts tend to show that McGowan was merely a line level employee who had no knowledge of Wiltz's scheme, had no control of the company, and who was herself ultimately defrauded by Wiltz.[6] *See* Trial Transcript at 80-81. It was Wiltz, not McGowan, who originally

---

*Astor*, 120 Cal. App. 4th 596, 603 (2004).

[6] Under civil conspiracy liability, McGowan could be liable for fraud or negligent misrepresentation based on representations made by Wiltz. Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her

United States District Court
Northern District of California

agreed to amend the contract to make plaintiff's fee refundable, and who later requested an additional $60,000 from plaintiff. While McGowan did send emails confirming that plaintiff's refund would be processed; in practice, she was merely forwarding plaintiff's request on to those with power to actually effectuate the refund – namely, Wiltz and Don Lucas. The record simply does not show that McGowan knew that plaintiff's fee would not be refunded.

### B.   UCL

Plaintiff contends that McGowan's conduct violates the UCL. FAC ¶¶ 92-104. California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice. Cal. Bus. & Prof. Code §§ 17200-17210. "The standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud." *In re First Alliance Mortgage Co.*, 471 F.3d 977, 995 (9th Cir. 2006). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

The UCL's fraud prong prohibits any "fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Under the fraud prong, a plaintiff must show that "members of the public are likely to be deceived." *Gruen v. EdFund*, No. C 09-00644 JSW, 2009 WL 2136785, at *5 (N.D. Cal. July 15, 2009).

An "unfair" practice is one which "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647(1996) (internal citations omitted).

---

own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Id.* at 511 (citation omitted). However any claim for civil conspiracy fails here because plaintiff has not shown by a preponderance of the evidence that McGowan had knowledge of Wiltz's fraudulent scheme, or that she intended to aid in its furtherance. *See Schick v. Lerner*, 193 Cal. App. 3d 1321, 1328 (1987) ("The *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.").

Some courts have further required that "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (internal quotations omitted).

An "unlawful" business practice encompasses "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Med. Instrument Dev. Labs. v. Alcon Labs.*, No. C 05-1138 MJJ, 2005 WL 1926673, at *6 (N.D. Cal. Aug. 10, 2005). The California Supreme Court has said that the unlawful prong "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL] and subject to the distinct remedies provided thereunder." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

The facts which give rise to plaintiff's UCL claim are the same facts which supported her claims for fraud and misrepresentation. Her UCL claim therefore fails for the same reasons that her fraud and misrepresentation claims were insufficiently proved – chiefly, because plaintiff has failed to show that McGowan had knowledge of, or intended to further any unlawful, fraudulent, or unfair practices that Mone't and Wiltz engaged in. *See Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1146 (E.D. Cal. 2013) (dismissing UCL claim with prejudice because "the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim."); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1205 (E.D. Cal. 2013) (same); *see also People v. Toomey*, 203 Cal. Rptr. 642, 650-51 (Ct. App. 1984) ("The concept of vicarious liability has no application to actions brought under the [UCL]… But if the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under [the UCL] can be imposed.").

**II.      Defendants Paul Wiltz and Mone't Inc.**

    **A.      Default Judgment**

Defendants Wiltz and Mone't have failed to appear in this case, or otherwise respond to plaintiff's allegations. On November 27, 2013, the Clerk entered default against Wiltz and Mone't. Docket No. 55. On February 11, 2014, the Court denied without prejudice plaintiff's motion for default judgment against Wiltz and Mone't. Docket No. 63. In its order, the Court explained that in cases with multiple defendants who are similarly situated, "judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (*citing Frow v. De La Vega*, 82 U.S. 552, 554 (1872)); Docket No. 63. Having adjudicated the matter as to defendant McGowan, the Court is now prepared to enter judgment against the defaulting defendants.

Default judgment does not flow automatically from the Clerk's entry of default, but is rather a matter reserved to the district court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). In the Ninth Circuit, courts are guided by the eponymously named *Eitel* factors in determining whether entry of default judgment is appropriate. "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the well-pleaded allegations pertaining to liability are taken as true. *TeleVideo* 826 F.2d at 917-18.

Upon reviewing the *Eitel* factors, the Court finds that default judgment is appropriate. As to the first factor, the possible prejudice to the plaintiff is high, as she would be without a remedy absent a default judgment. As to the second and third factors, plaintiff's FAC properly alleges the

elements of the causes of action she seeks to prevail upon. *See Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) ("The Ninth Circuit has suggested that [these two factors] require that [the] plaintiffs' allegations state a claim on which the plaintiff may recover.") (internal quotations omitted). As to the fourth factor, the sum of money at stake in this case is relatively small, particularly when compared to the seriousness of the defendants' conduct. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) (district court did not abuse its discretion by striking the answer and entering $11.1 million default judgment against defendant as a sanction for committing perjury and filing false pleadings.). As to the fifth factor, there is a low possibility of dispute concerning material facts because upon entry of default all well-pleaded facts relating to defendants' liability are taken as true. *TeleVideo* 826 F.2d at 917-18. As to the sixth factor, there is nothing in the record to suggest that defendants' absence is due to excusable neglect. If anything, defendants' scheme appeared to involve fleeing the state of Tennessee in order evade detection.

The final factor is the only one which weighs against entering default judgment. "[T]he general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (internal quotations omitted). Here, the Court cannot find that this final factor outweighs the other six, all of which militate in favor of entry of default judgment.

## B.    Damages

Upon entry of default, the well-pleaded allegations are taken as true, save allegations pertaining to the amount of damages. *TeleVideo* 826 F.2d at 917-18. "Additionally, no relief sought may be different in kind, or exceed in amount, than that which is demanded in the pleadings." *J&J Sports Prods., Inc. v. Sergura*, No. C 12-01702 JSW, 2014 WL 1618577, at *3

(N.D. Cal. Apr. 21, 2014) (citing Fed.R.Civ.P. 54(c)).

The FAC prays for (1) $11,500 in contract damages, (2) general damages in the amount of $68,500, (3) punitive damages according to proof, (4) prejudgment interest on the contract damages, (5) attorney's fees, (6) such other and further relief as the court may deem just and proper. FAC at 32.

As addressed in the Court's discussion of the second and third *Eitel* factors, plaintiff's complaint properly alleges the causes of action she seeks to prevail upon. Specifically, plaintiff alleges that Wiltz personally assured her multiple times, through email and phone correspondence, that the $11,500 fee would be refunded to her in the event the real estate transaction was not consummated. FAC at ¶ 8, 18, 51. Plaintiff also alleges that Wiltz requested an additional $60,000 that was not called for in the contract, and was never discussed prior to plaintiff sending Wiltz the $11,500 fee. *Id.* at p.5, ¶ 8.  Plaintiff further alleges that these acts breached material terms of the contract she entered into with Wiltz and Mone't, that she has performed all conditions required of her under the contract, and furthermore, that Wiltz acted with specific intent to mislead and defraud plaintiff. *Id.* at ¶¶ 44-61, 67, 70. Perhaps most tellingly, plaintiff alleges that she informed Wiltz many times that the $11,500 represented her entire life's savings, *see e.g. id.* at pp. 1, 2, ¶¶ 8, 12, 14, and yet nowhere is it alleged – nor is evidence introduced by any party – showing that Wiltz requested income verification, a credit score, a guarantor, or collateral before accepting her money and approving her application. It strains credulity to suggest that an individual could afford a five million dollar property with little more than ten thousand dollars in available assets and no other ready source of income. This dynamic strongly suggests that Wiltz knew from the outset that the transaction would never be consummated, and thus acted with intent to defraud plaintiff. Further, plaintiff's testimony and evidence suggest that she had been able to keep current on her outstanding obligations up until the time that she paid over the $11,500 to Mone't and Wiltz, but that after making the payment she became irremediably delinquent on her mortgage payments and

the bank began to process a foreclosure.  Trial Transcript at 91.  These too are consequences which would have been easily foreseeable to Mone't and Wiltz.  These facts support plaintiffs' claim to general damages amounting to $68,500.

The Court finds that the allegations in the complaint are true as to defendants Wiltz and Mone't, and that plaintiff has adequately supported the damages she seeks.  Additionally, the Court finds that the conduct of the defaulting defendants was intentional, oppressive, fraudulent, and malicious, thus entitling plaintiff to punitive damages under both California and Tennessee law. *See* Cal. Civ. Code § 3294; *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

IT IS THEREFORE HEREBY ORDERED, ADJUDGED and DECREED that judgment be entered in favor of plaintiff against defendants Mone't and Wiltz for $142,500 plus prejudgment interest, as follows:

1.     Mone't and Wiltz are ordered to pay $11,500 in contract damages to Plaintiff;

2.     Mone't and Wiltz are ordered to pay prejudgment interest on these contract damages from May 4, 2010 in an amount to be determined consistent with Cal. Civ. Code § 3289;

3.     Mone't and Wiltz are ordered to pay $68,500 in general damages to Plaintiff; and

4.     Mone't and Wiltz are ordered to pay $62,500 in punitive damages to Plaintiff.

**IT IS SO ORDERED.**

Dated: March 31, 2015

_____

SUSAN ILLSTON
United States District Judge